813 F.Supp. 269 (1993)
UNITED STATES of America, Plaintiff,
v.
Jacob WASHINGTON, Robert Hickman and Jerome Washington, Defendants.
Nos. 2:92-CR-63-01, 2:92-CR-63-02 and 2:92-CR-63-05.
United States District Court, D. Vermont.
February 3, 1993.
*270 John P. Tavana, Gregory L. Waples, Asst. U.S. Attys., Burlington, VT, for plaintiff.
Mark A. Kaplan, Jarvis & Kaplan, Burlington, VT, for defendant Jacob Washington.
Karen Shingler, Burlington, VT, for defendant Robert Hickman.
Bonnie Barnes, Sessions, Keiner, Dumont, Barnes & Everitt, Middlebury, VT, for defendant Jerome Washington.

OPINION AND ORDER
PARKER, Chief Judge.
On August 4, 1992, the defendants and five co-defendants were charged in a 49count *271 indictment with drug and firearms offenses. The drug offenses charged include conspiracy to distribute cocaine, possession of cocaine and distribution of cocaine. Among the firearms offenses charged, the indictment alleges that Jerome Washington used a firearm during a crime of violence, namely, retaliation against potential witnesses. During that incident a young woman was killed and two others seriously wounded. The five co-defendants have pled guilty. The remaining defendants have filed numerous pretrial motions. This Order addresses the motions requesting a change of venue.

I. DEFENDANTS' MOTIONS FOR CHANGE OF VENUE
All three remaining defendants have moved this Court for a change of venue under Rule 21(a) of the Federal Rules of Criminal Procedure. In addition, Robert Hickman has alternatively moved for a transfer of venue under Rule 21(b).

A. Rule 21(a) Motion

Rule 21(a) requires a district court to transfer a criminal proceeding to another district if the court is satisfied that there exists "so great a prejudice against the defendant" in the district where the prosecution is pending "that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district." Fed.R.Crim.P. 21(a). In substance, this rule provides a procedural protection against violations of a defendant's Sixth Amendment rights. "The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors." Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975) (citations omitted). The test for a court faced with making a change of venue determination then, is whether it is possible to select a fair and impartial jury. Decisions on such issues are committed to this Court's sound discretion. United States v. Maldonado-Rivera, 922 F.2d 934, 967 (2nd Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2858, 115 L.Ed.2d 1026 (1991).
Defendants contend that there are three factors, each of which has created an impermissibly hostile attitude within the District of Vermont. First, they argue that pretrial publicity has been massive, pervasive and prejudicial. Second they claim that the community is biased against them because they either reside now in New York, or have only recently become residents of Vermont, having moved here from New York. Finally, defendants argue that because Vermont is largely a white community and they are black, racial bias taints the community's attitude about their case. As defendants view it, these impermissible influences within the community have poisoned it and portend an ominous sign to them that no fair and impartial jury could be impanelled. Such influences on community attitude, they argue, require a finding of presumed prejudice. The Government responds that defendants have not carried their burden of establishing the likelihood of prejudice, but that in any event, the Court should only confront such a motion after voir dire.

1. Pretrial Publicity

The memoranda of all the parties on the issue of pre-trial publicity confuses the distinction between the two standards employed by federal courts in determining whether a change of venue is warranted under Rule 21(a). A presumption of prejudice applies when a court finds that the community has been so saturated with inflammatory pre-trial publicity that it pervades the proceedings and overrides notions of fairness in the determination of guilt or innocence. Murphy, 421 U.S. at 798-99, 95 S.Ct. at 2035-36; Rideau v. Louisiana, 373 U.S. 723, 726-27, 83 S.Ct. 1417, 1419-20, 10 L.Ed.2d 663 (1963); Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). This is the standard defendants request that this Court apply.
Where a presumption of prejudice does not apply, a court should transfer venue in cases where there is a reasonable likelihood that pretrial publicity will be so prejudicial as to prevent a fair trial. Maldonado-Rivera, *272 922 F.2d at 966-67; Sheppard v. Maxwell, 384 u.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). In its memorandum, the Government did not address the question of whether the application of a presumption of prejudice was warranted in this case; instead, it confined its argument to the second standard, reasonable likelihood of prejudice.

(a) Presumed Prejudice Standard
On the issue of presumed prejudice, it is by now clear that the use of such a presumption is rare, and is reserved for exceptional cases where the influence of the news media negatively pervades the proceedings, either in the community or courtroom. Murphy, 421 U.S. at 798-99, 95 S.Ct. at 2035-36; Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 553-54, 96 S.Ct. 2791, 2800-01, 49 L.Ed.2d 683 (1976); Coleman v. Kemp, 778 F.2d 1487, 1537 (11th Cir.1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). In fact, the Supreme Court has reversed a conviction solely on the basis of presumed prejudice due to pretrial publicity only once, in Rideau v. Louisiana. 373 U.S. at 726-27, 83 S.Ct. at 1419-20. In the Rideau case, the community at large was exposed to a lengthy televised confession which had been taped while the defendant was in custody and without advice of counsel. The confession was aired several times to tens of thousands of people in the community. The Supreme Court held that such broadcasting tainted the community and that any subsequent court proceeding "in a community so pervasively exposed to such a spectacle could be but a hollow formality." Id. at 726, 83 S.Ct. at 1419. The tenets of constitutional due process would not permit a conviction obtained under such circumstances to stand. Id. at 727, 83 S.Ct. at 1420. The Court refused to consider whether in fact there was actual prejudice on the jury, basing its decision instead on a presumption of prejudice from the pre-trial publicity of the confession. Id.
The Supreme Court again considered the issue of presumed prejudice from pretrial publicity in Irvin v. Dowd. 366 U.S. at 723-29, 81 S.Ct. at 1643-46. However, in Irvin, the Court reached its decision to reverse a conviction on a finding of actual prejudice following a review of both the nature of the pretrial publicity and the voir dire examination. Again, a publicized confession had tainted the pretrial atmosphere. The Court found that a "pattern of deep and bitter prejudice shown throughout the community" was "clearly reflected in the sum total of the voir dire examination of a majority of the jurors finally placed in the jury box." Id. at 727, 81 S.Ct. at 1645. Noting that eight out of the twelve jurors thought the defendant was guilty prior to hearing any evidence, the Court found actual prejudice and ruled that a finding of impartiality was inconceivable. Id.; see also Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (massive publicity during and prior to trial coupled with circus type atmosphere at trial created prejudicial circumstances).
More recently, the Eleventh Circuit decided a case solely on the basis of presumed prejudice from pretrial publicity. See Coleman v. Kemp, 778 F.2d 1487 (11th Cir.1985). Like the Court in Rideau, the Coleman court, finding a case for presumed prejudice, declined to consider actual prejudice. After an extensive review of the pretrial publicity, which comprised over forty pages of the Court's opinion, the Eleventh Circuit ruled that the totality of circumstances combined to form a picture of a community that was deeply prejudiced as to both guilt and sentence. In that case, an escaped convict was accused of murdering six members of a highly respected family in a tightly knit community. The Court found that the press had "saturated the community with overwhelming evidence of [the defendant's] guilt." Id. at 1539. Furthermore, a detailed and lengthy eye-witness account of the events surrounding the murders by the brother of the defendant was recounted by the press on so many occasions that it "approache[d] the prejudicial impact of the televised confession in Rideau." Id. at 1539-40. Accordingly, application of the presumed prejudice standard was warranted; any juror's claim that *273 they could be impartial could not be believed. Id. at 1543.
Defendants in this case argue that they are similarly situated to the defendants in the Rideau, Irvin and Coleman cases. I disagree. First and foremost, in all three cases mentioned above, the issue of a highly inflammatory publicized confession, or lengthy and detailed eye-witness account, weighed heavily in the balance. No such confession has been reported here. Furthermore, in the cases involving application of the presumed prejudice standard, press reports have included substantial editorial comment, not simply factual reporting. See e.g., Coleman, 778 F.2d at 1491-1537. In this case however, the record reveals that the press has confined itself to reporting facts without editorial commentary on guilt or innocence.[1] These facts have been gathered either from the public record or from Government press releases which reflect the identity and addresses of the accused persons, and the posture and nature of the case. Quite to the contrary of the defendants' claims, I do not find that these press releases constitute prejudicial material. Finally, while the initial media coverage of this case was fairly extensive, as is to be expected in a case involving an alleged murder linked to an alleged drug ring, in recent months the coverage has significantly decreased. It cannot realistically be described as massive, pervasive, or even incessant.[2]
In viewing the totality of circumstances in the case before me, the defendants have fallen far short of making a showing of the extreme and prejudicial pretrial publicity as was persuasive to the courts in Rideau or Coleman. The factual reporting at issue in the case presently before me does not, as of yet, require a finding that such pervasive, adverse, pretrial publicity exists so as to dispense with the requirement that actual prejudice be shown.

(b) Reasonable Likelihood of Prejudice Standard
Absent a showing of presumed prejudice, a defendant requesting a change of venue under Rule 21(a) bears the burden of demonstrating to the Court's satisfaction that there is a reasonable likelihood that pretrial publicity will prejudice his trial. United States v. Maldonado-Rivera, 922 F.2d at 966-67. I agree with the Government that the defendants in this case have failed to carry their burden, and that furthermore, this issue is most appropriately considered either during or after voir dire examinations. In our jury trial system, voir dire examinations, when conducted in a careful and thorough manner, have long been considered an effective tool for rooting out prejudice or bias. Patton v. Yount, 467 U.S. 1025, 1038 n. 13, 104 S.Ct. 2885, 2892 n. 13, 81 L.Ed.2d 847 (1984). In the case at bar, defendants have merely shown the existence of adverse pretrial publicity and that a substantial number of Vermonters have at least heard of the case.[3] They have not satisfied this Court that any negative publicity has so permeated the community with prejudice that there is a reasonable likelihood that their right to a fair and impartial jury will be compromised. In any event, I believe that the voir dire process is the best time to assess such claims, and thus exercise my discretion to wait until then to gauge first-hand *274 the impact of the pretrial publicity in this case.

2. Prejudice Toward "Outsiders"

Defendants have raised the argument that the known fact they either reside now in New York, or recently moved to Vermont from New York, has impermissibly influenced the community's attitude about their guilt or innocence, and accordingly, they cannot receive a fair trial in Vermont. Defendants have provided no substantive proof of such hostility, other than noting that some members of the Burlington community have expressed concern about urban drug problems being transported to Vermont. I believe that this issue, like that of the impact of pretrial publicity, is best considered after a careful and thorough voir dire examination.

3. Racial Bias

Defendants also make a claim of racial bias in support of their motion for change of venue. To show the underpinnings of racial bias Defendants assert: (1) that Vermont is predominantly (98%) white while the remaining defendants going to trial are black; (2) that this distinction is fueling community anger; and (3) that the case involves a violent interracial crime. These assertions prompt this Court to resolve an important pretrial question: Whether this case has reached such a point that the risk of racial bias has become constitutionally unacceptable. McClesky v. Kemp, 481 U.S. 279, 308-09, 107 S.Ct. 1756, 1775-76, 95 L.Ed.2d 262, reh'g denied, 482 U.S. 920, 107 S.Ct. 3199, 96 L.Ed.2d 686 (1987). As the Supreme Court so eloquently stated:
Because of the risk that the factor of race may enter the criminal justice process, we have engaged in "unceasing efforts" to eradicate racial prejudice from our criminal justice system. Batson v. Kentucky, 476 U.S. 79, 85 [106 S.Ct. 1712, 1716-17, 90 L.Ed.2d 69] (1986). Our efforts have been guided by our recognition that "the inestimable privilege of trial by jury ... is a vital principle, underlying the whole administration of criminal justice," Ex parte Milligan, 4 Wall. 2, 123 [18 L.Ed. 281] (1866). See Duncan v. Louisiana, 391 U.S. 145, 155 [88 S.Ct. 1444, 1450, 20 L.Ed.2d 491] (1968). Thus, it is the jury that is a criminal defendant's fundamental "protection of life and liberty against race or color prejudice." Strauder v. West Virginia, 100 U.S. 303, 309 [25 L.Ed. 664] (1880).
Id. 481 U.S. at 309-310, 107 S.Ct. at 1776. A panel of racially biased jurors cannot provide this fundamental protection.
To resolve the issue of whether Defendants have shown that such protection is not afforded them in this case, I turn to three constitutional principles. First, "there is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups." Rosales-Lopez v. United States, 451 U.S. 182, 190, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22 (1981). Thus, the mere fact that this case involves interracial violence, or is pending in a district which is predominantly white, does not trigger prophylactic measures such as a transfer of venue. There must be more substantial indications of the likelihood of racial bias to support a change of venue request. Cf. id. (Substantial indications of racial prejudice beyond mere fact of interracial violence required to reverse for abuse of discretion a trial court's denial of voir dire inquiry on racial bias).
However, keeping that first principle in mind, evidence of widespread bias in the community can require a change of venue. McClesky, 481 U.S. at 309 n. 30, 107 S.Ct. at 1776 n. 30 (citing Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). Alternatively, if there is a significant likelihood that racial bias may influence a jury panel, questioning as to such bias during voir dire is necessary. Id. at 309 n. 30, 107 S.Ct. at n. 30 (citing Ristaino v. Ross, 424 U.S. 589, 596, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976)).
Applying these principles to the facts presented in the case before me, I conclude that as with the issues of pretrial publicity and prejudice based on state citizenship, the issue of racial bias is best addressed at the time of voir dire. See *275 United States v. Affleck, 776 F.2d 1451, 1454-55 (10th Cir.1985) (Prejudice based on religious affiliation can be rooted out by thorough voir dire examination). Specifically, I find no evidence of widespread racial bias which would justify a change of venue at this point in time. Defendants have referred to a remark by Peter Clavelle, the mayor of Burlington, which indicated that he was concerned about racist comments he had heard from members of the community. While such a remark suggests that questioning regarding racial bias may very well be appropriate during voir dire, it hardly constitutes a showing of the widespread community bias as was envisioned in the Irvin opinion. See 373 U.S. at 725-26, 83 S.Ct. at 1418-19. Accordingly, I hold that the facts of this case have not reached such a point that the risk of racial bias has become constitutionally unacceptable.

B. Rule 21(b) Motion

At the outset, I note that only one defendant, Robert Hickman, has moved this Court for a transfer pursuant to Rule 21(b). Defendant Hickman is a current resident of New York and argues that the case against him is more conveniently tried in New York. He also argues that because of the pretrial publicity, residential status, and racial issues, this case should be transferred to New York in the interests of justice. I disagree.
A change of venue upon a motion by a defendant for the convenience of the parties, or in the interest of justice is within the discretion of the trial court. Fed.R.Crim.P. 21(b); United States v. Stephenson, 895 F.2d 867, 875 (2nd Cir.1990). A court confronting a Rule 21(b) motion should consider a variety of factors, "the most important of which for our purposes are: (a) inconvenience and expense to the parties; and (b) the location of the parties, witnesses, counsel, events in issue, and necessary documents and records." Stephenson, 895 F.2d at 875. The burden is on the defendant to make a satisfactory showing that a transfer is warranted. 2 Charles A. Wright Federal Practice and Procedure: Criminal 2nd § 344 at 266-67 (1982).
The facts in this case decidedly favor retaining venue in this district. Of significance, the Government represents that virtually all of its witnesses reside in Vermont. Defense counsel reside in Vermont. This is a multi-defendant case where two out of the three defendants going to trial reside in Vermont. The prosecutors also reside in Vermont. These factors alone suggest that it would be unduly burdensome and expensive to require that the trial be held in New York. Furthermore, this case involves charges of drug conspiracy as well as possession and distribution of illegal drugs and firearms offenses. Many of the events leading to the charged offenses occurred in Vermont; hence it is reasonable to believe that much of the documentation and records will be found in Vermont. Such considerations are sufficient to convince me that while Defendant Hickman has pointed to several reasons suggesting inconvenience to him, the balance of factors regarding convenience to all the parties weigh heavily in favor of holding trial here in Vermont. See Stephenson, 895 F.2d at 875.
As to Defendant Hickman's claims regarding change of venue in the interests of justice, the evidence in the record pertaining to pretrial publicity, racial bias and bias on account of residential status is insubstantial and does not support a change of venue at this time. Furthermore, there is no doubt that a transfer would further delay trial. I must consider not only a defendant's interests in venue, but also, the public's right to a speedy trial in this matter. Accordingly, for all of the reasons stated above, a transfer of venue under Rule 21(b) is inappropriate in this case.

II. CONCLUSION
Defendants' motions for change of venue pursuant to Rule 21(a) and Rule 21(b) are hereby DENIED. I note in addition that several other pretrial motions are pending for which hearings have been requested, or will be required. Counsel for all parties are hereby advised that hearings will be *276 scheduled for the following motions: (1) Robert Hickman's motion for change of counsel; (2) Robert Hickman's motion for suppression of statements; (3) Jacob Washington's motion for suppression of statements; and (4) Jacob and Jerome Washington's motions for exclusion of tapes based on audibility.
NOTES
[1] Photocopies of newspaper coverage and a tape of television coverage has been supplied to, and reviewed by, the Court.
[2] Moreover, it should be noted that the jury which will be impanelled in this case will be drawn from seven counties across northern Vermont. The publicity has been focused on the cities of Burlington and Rutland, Vermont, and the surrounding counties. The "community" from which the jury will be drawn is significantly larger than the "community" wherein the publicity has been primarily focused.
[3] Jacob Washington submitted a report on a survey conducted at his request on a random sample of Vermont residents. Out of 223 responses, 103 (46%) had heard of the case; 102 (46%) had not. In 102 responses, individuals stated that they had heard of a case involving murder, 34 had heard of a case involving black men, and 25 had heard the case involved men from New York. Of those who indicated they had heard of the case, only 25 (11% of the total responses) indicated that they had any opinion about it. These results tend to negate rather than support the defendants' claims of pervasive, prejudicial pretrial publicity.