AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

WEI LI FANG, Defendant

---

AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

SIITU SANERIVI, aka LUAPENE, Defendant

---

AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

WEI KI FANG, Defendant

High Court of American Samoa
Trial Division
CR No. 05-03
CR No. 06-03
CR No. 07-03

June 10, 2003

Before KRUSE, Chief Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Marcellus T. Uiagalelei, Asst. Attorney General
For Wei Li Fang, William H. Reardon
For Sanerivi and Wei Ki Fang, Sharron I. Rancourt, Asst. Public Defender

ORDER DENYING MOTIONS FOR CHANGE OF VENUE

We have consolidated the motions of the three defendants because they each seek the same relief: a change of venue. Each defendant was arrested and charged with various counts of Promoting Prostitution in the First Degree: Wei Ki Fang, one count; Siituu Sanerivi, six counts; and Wei Li Fang, nine counts plus one count of assault in the second degree. The defendants argue that the pre-trial publicity has been massive, pervasive, and prejudicial. Also, because both Wei Ki and Wei Li Fang are Chinese nationals—though Sanerivi was born in Western Samoa—counsel for Wei Ki Fang submits that the publicity is the product of bigotry from a "culture which admits but never really accepts people who are not born here." On these grounds they all seek a change of venue.

## Discussion

### I. Pre-trial Publicity

 "A fair trial in a fair tribunal is a basic requirement of due process." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)); *see generally* AM. SAMOA REV. CONST., art. I, § 2; U.S. CONST., amend. V. When the trial is conducted in front of a jury, due process assures an accused of, *inter alia*, certain minimal protections: 1) "a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power," *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966) (quoting *Chambers v. Florida*, 309 U.S. 227, 236-37 (1940)); 2) "a panel of impartial, 'indifferent' jurors," *Irvin*, 366 U.S. at 722; and 3) "the requirement that the jury's verdict be based on evidence received in open court, not from outside sources," *Sheppard*, 384 U.S. at 351. *See Murphy v. Florida*, 421 U.S. 794 (1975); *Rideau v. Louisiana*, 373 U.S. 723 (1963).

106

■ Due process is violated when inflammatory and pervasive publicity taints a jury pool, resulting in preconceived ideas by often misinformed jurors. The Supreme Court has established two ways in which to show such a taint—presumed (or inherent) and actual prejudice. *See Irvin*, 366 U.S. at 728 (actual prejudice); *Rideau*, 373 U.S. at 723 (presumed (or inherent) prejudice); *Nevers v. Killinger*, 169 F.3d 352, 362-63 (6th. Cir. 1999); *United States v. Washington*, 813 F. Supp. 269, 272-73 (D. Vt. 1993). Actual prejudice requires a showing "that it is reasonably likely that a fair and impartial jury cannot be secured." *Bell v. Lynbaugh*, 663 F. Supp. 405, 417 (E.D. Tex. 1987). It is "discerned only by reviewing both the extent *and* nature of the [pre-trial] publicity *and* the responses of the prospective jurors in *voir dire.*" *Nevers*, 169 F.3d at 362 (citing *Irvin*, 366 U.S. at 725-28) (emphasis in original); *see also Am. Samoa Gov't v. Snow*, 26 A.S.R.2d 78, 80 (Trial Div. 1994). At this point, such an inquiry is premature, as there has not yet been jury *voir dire.*

■ The defendants are left then with the highly difficult task of showing that the publicity up until now has created an atmosphere of presumed prejudice. A showing of presumed prejudice "is rare, and is reserved for exceptional cases where the influence of the news media negatively pervades the proceedings, either in the community or courtroom." *Washington*, 813 F. Supp at 272; *United States v. Moreno*, 815 F.2d 725, 731-39 (1st Cir. 1987); *Coleman v. Kemp*, 778 F.2d 1487, 1490 (11th Cir. 1985). It can be proven without the benefit of juror interviews because the atmosphere created belies any claim of impartiality. *See Rideau*, 373 U.S. at 727; *Moreno*, 815 F.2d at 753 (Torruella, J., dissenting); *Coleman*, 778 F.2d at 1543; *Washington*, 813 F. Supp. at 272-73. But the defendants carry a heavy burden of showing oversaturation of highly sensationalized news coverage. *See Coleman*, 778 F.2d at 1490; *Commonwealth v. Drumheller*, 808 A.2d 893, 902 (Pa. 2002).[1]

■ Applying these standards, and based on the paltry evidence before us, defendants have not presented a compelling case of prejudice. To begin with, they cite only newspaper articles and editorials. There is no

---

[1] The Supreme Court has reversed a conviction only once on this ground: In the *Rideau* case, the community at large was exposed to a lengthy televised confession which had been taped while the defendant was in custody and without advice of counsel. The confession was aired several times to tens of thousands of people in the community. The Supreme Court held that such broadcasting tainted the community and that any subsequent court proceeding "in a community so pervasively exposed to such a spectacle could be but a hollow formality. *Washington*, 813 F.Supp at 272 (citing *Rideau*, 373 U.S. at 762); *see Coleman*, 778 F.2d 1487.

evidence whatsoever of prejudiced radio or television coverage or public sentiment generally. *But see Rideau*, 373 U.S. at 723; *Coleman*, 778 F.2d at 1487. Furthermore, the newspaper articles, while prone to hyperbole, are not inflammatory. Granted, some of the headlines describe the defendants of a "prostitution ring" or "sex ring." But, the articles make an effort to point out that the defendants have not been found guilty; rather, they are *alleged* to have committed the crimes. In fact, most of the articles contain an attempt to reproduce testimony and arguments from court, heard in a public forum open to all. That is, they contain information that an average citizen would be privy to were he to go to court himself. Finally, the defendants reproduced only six articles, a far cry from the type of overwhelming saturation which can lead to a presumption of prejudice. *See Coleman*, 778 F.2d at 1491-1537.

The letters to the editor, on the other hand, are more opinionated. They do contain conclusory, matter-of-fact pronouncements of guilt. Some are indeed embarrassingly slanted against the defendants on account of their race. We refuse, however, to find that a few rogue letters to the editor represent the beliefs of an entire society. *But see Coleman*, 778 F.2d at 1491-1537. These few letters do not represent a society scornful of outsiders, as counsel Reardon would have us believe. Instead, by attempting to influence the public, these letters affirm that race-based accusations lack merit and credence.

One might question why a newspaper would choose to publish such letters in the first place. Perhaps they believe that such a tabloid styled format is profitable. Or, perhaps they have a policy of publishing all letters, regardless of content.[2] In either event, the airing of narrow-minded, prejudiced opinions is protected in our society precisely because it exposes the absurdity and weaknesses of the speaker's views. But by protecting this type of speech, we need not sweepingly attribute it to all. We need only recognize it represents a very limited section of society.

---

[2] A newspaper need not establish a reason for publishing the articles and letters contained in its editions. Freedom of the press is paramount to a just, transparent society and we are powerless to restrain, save for a few limited situations. Of course the press has ethical obligations to be objective and truthful--even more so when covering the happenings of a small island community and even more so when the island's media outlets are virtual monopolies. The ability to influence carries a moral burden that should not be shunned just to sell papers. Yet newspapers should be forewarned: as of now, no "court has yet decided that, while convictions must be reversed and miscarriages of justice result because the minds of jurors or potential jurors were poisoned, the poisoner is constitutionally protected in plying his trade." *Irvin*, 366 U.S. at 761 (Frankfurter, J., concurring).

Finally, we note that if we were to make any finding of prejudice, it is more likely to follow the opportunity to listen to potential jurors. *See, e.g., Washington*, 813 F. Supp. at 273; *Drumheller*, 808 A.2d at 903. Only then can we meaningfully gauge the public's sentiment.

## II. Remedies

The defendants have asked that if we find no prejudice at this juncture, that we revisit the motion once again after *voir dire*. Thus, while we need not now decide the proper remedy were we to find prejudice, the possibility remains. We note then that were a showing of prejudice to be made, the remedy would not be a change of venue.

■ A change of venue is a common remedy stateside, but is unsuitable here in American Samoa. *See Moreno*, 815 F.2d 725; *cf. In re San Juan Star Co.*, 662 F.2d 108, 117 (1981) (finding that change of venue unsuitable in Puerto Rico and alternative remedies appropriate). A change of venue stateside is sought in the hopes that moving the trial out of the jurisdiction where the prejudice has tainted the jury pool will result in a neutral jury elsewhere. *See Irvin*, 366 U.S. at 719-21. This is but a pipe dream here in American Samoa.

It is no secret that our island community is small. We have but one jury roll. All the registered voters on the island are part of that roll. Transferring a case to another part of the islands would only result in a physical change of venue; but, inherently, the proceedings would be the same. The jury would be selected from the same pool. Furthermore, because of the compact social structure of this island community, chances are that if the media has created a prejudicial environment it will have infected the farthest corners of the Territory. If anything, moving a criminal case would likely cause a great inconvenience to all the parties, including the Court.

■ Defendants cite A.S.C.A. § 46.0601 to support the notion that a transfer is possible. This enactment reads:

> In any case where the interest of justice or the convenience of parties, witnesses or the court requires, the Chief Justice or the Associate Justice may order that a session of any division of the High Court adjourn from the courthouse to sit at any appropriate place in American Samoa.

This statute, however, was enacted in 1969 (P.L. 11-54) long before criminal jury trials in American Samoa were found to be neither "impractical nor anomalous," and, therefore, constitutionally mandated. *See King v. Andrus*, 452 F. Supp. 11, 17 (D.D.C. 1977). Rather, the statute is geared towards physically holding court in a more convenient

109

location in the Territory; for example, this power might be invoked in a case involving a dispute in Manu'a, where the majority of witnesses would be unable to attend a court session in Fagatogo. But the situation would have to be extreme. Indeed, we cannot recall any instance where this section has been used in recent times. The statute simply does not contemplate a change of venue of the type sought by the defendants. *Compare* Fed. R. Crim. P. 21(a) *with* A.S.C.A. § 46.0601 *and* Fed. R. Crim. P. 21(b).

 Therefore, if prejudice were ever proven at the preliminary stages of a criminal prosecution, we would have to explore other alternatives. *See Moreno*, 815 F.2d at 731. A change of venue is not constitutionally required; instead, we need only assure a fair trial.[3]

## Order

 We accordingly deny the motion for change of venue. We will, however, allow the defendants to submit a *voir dire* questionnaire ahead of time for the court's review not later than two weeks before trial. The questionnaire should provide the questions in both English and Samoan. It may include any inquiries about media exposure. The questions should be amenable to a yes or no response. More importantly, the questions shall not touch on 1) any anticipated instructions; 2) the verdict to be returned when those questions are based upon hypothetical facts or situations; 3) substantive arguments of the case; and 4) data available from jury information sheets. Then, based upon the answers, during *voir dire*, we will take appropriate steps in establishing whether any of the jurors has been prejudiced including individual *voir dire* if necessary.

It is so ordered.

---

[3] This is hardly the first, nor the last, criminal matter to receive considerable pretrial press attention. Nor is this the first case where the emotive, but baseless, plea of jury taint has been heard. The decision in *King v. Andrus*, *supra*, has proven rather insightful. Jury trials, in serious criminal cases, have proven to be both practical and not anomalous in a relatively small island community. Even so, there is always the available option of a bench trial to allay any lingering defense suspicions.